Samuel Adams
ADAMS DAVIS P.C.
35 W. Broadway, Suite 203
Salt Lake City, UT 84101
Telephone: (801) 532-9500
Email: same@adamsdavis.com

*Counsel for Plaintiffs and the Class*
*[Additional Counsel on Signature Page]*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRAVIS GREGORY, NICOLE GREGORY, ALAN LAMBERT, and ROBERT BAKER, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br><br>ZIONS BANCORPORATION,<br><br>              Defendant. | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF CLASS, AND APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL**<br><br><br>Case No. 2:19-cv-00015-HCN-DBP<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Dustin B. Pead |

# Table of Contents

I.     INTRODUCTION ................................................................................................ 1

II.    DESCRIPTION OF THE LITIGATION .......................................................... 4

III.   THE SETTLEMENT NEGOTIATIONS ......................................................... 6

IV.   THE PROPOSED SETTLEMENT ................................................................... 6

V.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL .......... 9

   A.   The Settlement is the Product of Serious and Informed Arm's-Length Negotiations Among the Parties ............................................................ 11

   B.   The Settlement has no Obvious Deficiencies and is Adequate Considering the Significant Risks of Continued Litigation ....................................... 12

   C.   The Proposed Plan of Allocation Treats Settlement Class Members Equitably ............. 15

VI.   THE LITIGATION SHOULD BE CERTIFIED AS A CLASS ACTION FOR SETTLEMENT PURPOSES ............................................................................ 15

   A.   The Settlement Class Satisfies the Requirements of Rule 23(a) ..................... 15

      1.   The Settlement Class Members are too Numerous to be Joined ................. 16

      2.   There are Common Questions of Law and Fact ........................................ 16

      3.   Plaintiff's Claims are Typical of the Settlement Class ............................... 17

      4.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class .... 18

   B.   The Settlement Class Satisfies the Requirements of Rule 23(b) ..................... 19

      1.   Common Legal and Factual Questions Predominate ................................. 19

      2.   A Class Action is Superior to Other Methods of Adjudication ................... 20

VII.  THE NOTICE AND CLAIMS PROCESS SHOULD BE APPROVED ......................... 20

VII.  PROPOSED SCHEDULE AND REQUEST FOR FAIRNESS HEARING .................. 23

IX.   CONCLUSION ................................................................................................ 23

Plaintiffs and proposed class representatives, Travis Gregory, Nicole Gregory, Alan Lambert and Robert Baker ("Plaintiffs" or "Representative Plaintiffs"), respectfully submit this memorandum in support of their unopposed motion (the "Preliminary Approval Motion") for (i) preliminary approval of the proposed settlement (the "Settlement") of the above-captioned class action (the "Action") on the terms and conditions set forth in the Settlement Agreement dated November 22, 2022 (the "Settlement Agreement") submitted herewith;[1] (ii) certification of the Settlement Class for settlement purposes; (iii) approval of the form and manner of providing notice of the proposed Settlement to the members of the Settlement Class ("Settlement Class Members"); and (iv) scheduling of a hearing to consider final approval of the Settlement (the "Final Approval Hearing").

## I.     INTRODUCTION

Subject to Court approval, Plaintiffs, on behalf of themselves and the putative Settlement Class (defined below), have agreed to settle all claims asserted or that could have been asserted in the Action against Zions Bank Zions Bank Bancorporation, N.A. ("Zions Bank" or "Defendant")[2] in exchange for $2.5 million in cash (the "Settlement Amount" or "Settlement Fund").

The Settlement, if approved, will resolve and release all claims against Zions Bank and certain related parties. Plaintiffs' principal reason for entering into the Settlement is the cash benefit provided for the Settlement Class, balanced against the significant risk that a smaller

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Paul J. Scarlato in support of this Motion filed herewith ("Decl. ¶__"). All capitalized terms not otherwise defined herein have the meaning set forth in the Settlement Agreement.

[2] Plaintiffs and Zions Bank are referred to collectively as the "Parties."

recovery—or indeed, no recovery—might be achieved after additional steps in the litigation that could last for years.

During the course of the litigation, Plaintiffs, through proposed Class Counsel and additional plaintiffs' counsel, among other things: (a) drafted three detailed complaints and a proposed amended complaint; (b) conducted an extensive investigation into the Class's claims through formal and informal discovery of the Zions Bank and third parties; (c) briefed and argued a motion to dismiss by Zions Bank; (d) moved for leave to file an amended complaint seeing to reinstate claims dismissed by the Court (e) reviewed and analyzed tens of thousands of pages of documents produced by Zions Bank and made available by the Receiver; (f) prepared a detailed mediation submission in connection with an all-day mediation session before Robert Meyer, Esquire of JAMS on February 26, 2021; (g) defended the depositions of each of the Plaintiffs and conducted the depositions of non-party witnesses; (h) reengaged in settlement negotiations with Zions Bank with Mr. Meyer's assistance over the course of several months in December 2021 and January 2022 before reaching an agreement in principle to resolve the Action on January 14, 2022; (i) drafted the Settlement Agreement and supporting documents, and (j) engaged in extensive discussions with the Receiver and counsel for Zions Bank to determine the best and most efficient way to distribute the Settlement to the Settlement Class.

The Parties reached the Settlement in the months following an all-day mediation conducted by Mr. Meyer, at which counsel for all Parties were in attendance. Counsel for the Parties also engaged in extensive settlement-related communications before and after the mediation. Plaintiffs closely monitored and participated in this Action and recommend the Settlement be approved. Proposed Settlement Class Counsel, who have extensive experience in

complex litigation and class actions, believe the Settlement is in the best interests of the Settlement Class, which is defined as follows:

> All persons and entities who invested in the Rust Rare Coin Silver Pool and were harmed in connection with such investment.

Excluded from the Settlement Class are (1) Zions Bank; (2) any person, firm, corporation, or other entity related to or affiliated with Zions Bank or in which Zions Bank has or had a controlling interest, (3) Gaylen Rust, Denise Rust, Joshua Rust, and their immediate family members; (4) all other employees of Rust Rare Coin, Inc.; (5) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person; and (6) the currently-named plaintiffs in the lawsuit pending in the Third Judicial District Court of Salt Lake County, State of Utah, as *North Valley Partners, et al. v. Zions Bancorporation, N.A*. Civil No. 210902187. Also excluded from the Settlement Class will be the persons and/or entities who validly request exclusion from the Settlement Class within the time period set by the Court in the Preliminary Approval Order. See, Decl. Ex. 1 (Settlement Agreement).

Prior to the Final Approval Hearing, the parties will submit a motion for final approval ("Final Approval Motion"), which will ask the Court to make a final determination as to whether the Settlement is fair, reasonable and adequate. At this time, Plaintiffs requests only that the Court grant preliminary approval of the Settlement so that notice ("Class Notice" or "Notice") of the Settlement may be disseminated to the Members of the Settlement Class, so that they may have an opportunity to object or excuse themselves from the Settlement Class, and the Final Approval Hearing may be scheduled. See Decl. Ex. C to Ex. 1, Class Notice.

Plaintiffs respectfully requests the Court enter the proposed Preliminary Approval Order submitted herewith that will: (a) grant preliminary approval; (b) approve the form and manner of giving Notice to the Settlement Class; (c) preliminarily certify the Settlement Class for the

purposes of Settlement; (d) appoint Class Counsel, and (e) schedule the Final Approval Hearing at which the Court will consider (i) final approval, (ii) approval of the Settlement Distribution Plan for distribution of the Settlement Fund, and (iii) Class Counsel's application for an award of attorneys' fees and expenses ("Attorneys' Fees and Expenses Application"), and for an Incentive Award to the Plaintiffs. Plaintiffs request the Court schedule the Final Approval Hearing at the earliest possible date, but at least 120 days after preliminary approval to allow time for issuance of the Notice, and for opt-outs or objections and responses thereto.

## II.    DESCRIPTION OF THE LITIGATION

The Action arises out of the Rust Rare Coin ("RRC" or "Rust") Ponzi scheme conducted by Galen Rust through his purported Silver Pool. It was initiated on January 8, 2019, with the filing of a class action complaint asserting claims against Zions Bank for aiding and abetting Rust's fraud, breach of fiduciary duty and conversion, and for negligence and breach of fiduciary duty. ECF 1. Plaintiffs filed a second class action complaint on January 15, 2019 asserting similar claims on behalf of additional plaintiffs. On February 12, 2019, the Court consolidated the two cases. ECF 21.

On April 12, 2019, Plaintiffs filed an Amended Complaint (the "Complaint") naming the Plaintiffs as proposed class representatives and making additional factual allegations against the Zions Bank. ECF 34.

On June 11, 2019, Zions Bank moved to dismiss the Complaint for failure to state a claim raising a series of legal challenges. ECF 48. Plaintiffs opposed Zions Bank's motion on August 12, 2019, and on September 11, 2019, Zions Bank filed its reply brief. ECF 51 and 54.

On December 17, 2019, the Court heard argument on Zions Bank's motion, and on August 26, 2020, issued a ruling dismissing Plaintiffs' claims for negligence, breach of fiduciary duty,

aiding and abetting breach of fiduciary duty, and aiding and abetting fraud. Plaintiffs' claim for aiding and abetting conversion survived, and was allowed to proceed. ECF 64 and 73.

Following the Court's ruling, the Parties served formal discovery requests with each side serving requests for production of documents, interrogatories and requests for admissions. Thereafter, the Parties agreed to explore a resolution of the Action through mediation. In that regard, the Parties scheduled a mediation session with Robert Meyer, Esquire of JAMS, a highly experienced mediator with a track record of facilitating settlements in complex class actions. Prior to the mediation session, the Parties exchanged document discovery targeted to Plaintiffs' claim and Zions Bank's defenses so that the Parties would have a full and complete picture of the strengths and weaknesses of their respective cases going into the mediation.

On February 15, 2021, the Parties exchanged detailed mediation submissions with each other and Mr. Meyer outlining their legal claims and defenses, the factual support for those claims and defenses, and the expected hurdles each party would likely face. On February 26, 2021, the Parties participated in an all-day mediation session conducted by Mr. Meyer. The Parties were unable to reach a settlement. However, Mr. Meyer kept in contact with the Parties and remained abreast of the Action as it continued over the following months.

After the failed mediation, the Parties aggressively pursued discovery, exchanging thousands of pages of documents, exchanging privilege logs, serving and responding to third-party subpoenas and producing documents in response thereto, and engaging in substantial motion practice thereon. As part of that discovery, Plaintiffs aggressively pursued access to Zions Bank's investigative files maintained under the Bank Secrecy Act. Magistrate Judge Pead, however, denied the requested access to those files.  ECF 153.

On April 23, 2021, Plaintiffs filed a motion for leave to file a second consolidated amended complaint alleging additional facts in an attempt to revive their claims for aiding and abetting fraud and breach of fiduciary duty. ECF 89. On June 11, 2021, Zions Bank opposed Plaintiffs' motion. ECF 119. On October 22, 2021, the Court heard argument on Plaintiffs' motion for leave to amend, after which it took the matter under consideration. ECF 176.

Deposition practice began in July 2021 and continued into the Fall and Winter of 2021. It started with Zions Bank taking the depositions of the four named Plaintiffs, as well as numerous third-party witnesses. Depositions of Zions Bank's witnesses were scheduled for the first quarter of 2022.

In December 2021, the Parties reengaged in settlement negotiations and in January 2022, the Settlement was reached.

### III.    THE SETTLEMENT NEGOTIATIONS

During the initial all-day mediation session conducted by Mr. Meyer on February 26, 2021, the Parties were unable to reach a settlement. However, Mr. Meyer kept in contact with the Parties and remained abreast of the Action as it continued over the following months as the litigation efforts were continuing. In December 2021, Mr. Meyer reached out to the Parties to inquire whether settlement talks should resume. In response thereto, and having had the benefit of additional discovery and motion practice, the Parties engaged in renewed negotiations, that involved extensive back and forth with the mediator. As a result thereof, the Parties were able to reach the Settlement.

### IV.    THE PROPOSED SETTLEMENT

The proposed Settlement, if approved by the Court, will resolve and release claims of the Settlement Class against the Zions Bank. The Settlement provides that Zions Bank shall pay $2.5 million for the benefit of the Settlement Class. Plaintiffs arrived at their decision to settle this Action after their counsel conducted a thorough investigation of the claims and allegations asserted in the Complaint. In addition, the Settlement was the product of extensive arms-length negotiations conducted with Mr. Meyer's assistance. In evaluating the Settlement, Plaintiffs and their counsel considered: (a) the substantial benefits to the Members of the Settlement Class from the Settlement; (b) the facts developed during Plaintiffs' investigation and discovery; (c) the attendant risks of continued litigation and the uncertainty of the outcome of the Action; (d) the probability of success on the merits; and (e) the conclusion of Plaintiffs' counsel that the terms and conditions of the Settlement are fair, reasonable, adequate and in the best interests of Plaintiffs and the Settlement Class.

Zions Bank has vigorously denied, and continues to deny, that it committed any violation of law, or engaged in any of the wrongful acts alleged in the Action. Zions Bank expressly maintains that it is entering into the Settlement solely to eliminate the burden, expense, distraction and uncertainties inherent in further litigation.

The $2.5 million Settlement provides a substantial and immediate benefit to the Settlement Class. Although proposed Class Counsel believes it would be able to prove Plaintiffs' claims, there is a substantial risk that Settlement Class Members would not be able to recover anything at all if the Action were not settled. For example, Zions Bank raised a multitude of factual and legal challenges to Plaintiffs' claims in its motion to dismiss. ECF 48 and 70. The Court's ruling on Zions Bank's motion (ECF 73) dismissed all but one of Plaintiffs' claims leaving a single claim,

for aiding and abetting conversion. Zions Bank also raised a number of arguments undermining this claim.

Plaintiffs also recognized that they faced a substantial risk that the Court would deny their motion to file a second amended complaint (ECF 90) and allow Plaintiffs to revive their claims for aiding and abetting fraud and breach of fiduciary duty. In addition, the Settlement eliminates risk related to class certification. Zions Bank indicated it would oppose a motion for class certification arguing that Plaintiffs could not show that common issues predominate. Lastly, the Settlement eliminates risk related to the proof of damages. Plaintiffs would have certainly faced challenges to their damages estimate and Zions Bank indicated it would argue that its conduct did not cause Plaintiffs' harm, and many categories of investor losses should be eliminated, including, among others, all deposits before Michael Hanson began serving as the Broadway Branch manager in April 2016. If litigation continued, the Settlement Class would still need to overcome the various legal defenses and procedural hurdles in order to survive any dispositive or certification motions or recover at trial.

The Class Notice, substantially in the form attached as Exhibit C to Decl. Ex. 1, explains the terms of the Settlement, including that the Net Cash Settlement Amount will be distributed to eligible Settlement Class Members who either submitted a timely claim in the Receivership Action, or who timely submit a valid Claim Form ( Decl. Ex. 2) pursuant to the proposed Settlement Distribution Plan referenced in the Notice and subject to this Court's approval; there will be no reversion to Zions Bank or any persons/entities paying the same. It informs Settlement Class Members of Class Counsel's application for an Attorneys' Fees and Expenses Award and Incentive Award in connection with the representation of the Settlement Class, and the proposed Settlement Distribution Plan for distributing the Net Cash Settlement Amount. The Notice further

details: (i) the procedures for objecting to the Settlement, the Settlement Distribution Plan, Class Counsel's application for an Attorneys' Fees and Expenses Award, and Incentive Award; (ii) the procedure for requesting exclusion from the Settlement Class, and (iii) the date, time, and location of the Final Approval Hearing.

## V.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts. *See American Home Assurance Co. v. Cessna Aircraft Co.,* 551 F. 2d 804, 808 (10th Cir. 1977) ("The inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims."); *see also Big O Tires, Inc. v. Bigfoot 4x4, Inc.,* 167 F. Supp. 2d 1216, 1229 (D. Colo. 2001) ("As a matter of public policy, the law favors and encourages settlements[;] [t]he settlement of actions should be fostered to avoid protracted, wasteful and expensive litigation."). The "presumption in favor of voluntary settlement agreements" is especially strong in class actions. *O'Dowd v. Anthem, Inc.,* 2019 U.S. Dist. LEXIS 153610 at *35, 2019 WL 4279123 (D. Colo. Sept. 9, 2019), quoting *Tuten v. United Airlines, Inc.,* 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014).

Judicial approval for the compromise of class claims under Fed. R. Civ. P. 23(e) consists of a two-step process: preliminary approval and a subsequent fairness hearing. In this first stage, the Court preliminarily approves the settlement agreement, certifies a settlement class, and authorizes that notice be given to the class so that interested members may object to the fairness of the settlement or opt out of the class. Fed. R. Civ. P. 23(e). In the second stage, after notice is provided to the Settlement Class, the Court holds a fairness hearing at which it will address any timely objections to either class treatment of the litigation or the fairness and adequacy of the

settlement. *See CO Craft, LLC v. Grubhub, Inc.* 2022 U.S. Dist. LEXIS 134507 at *8-9 (D. Colo. July 28, 2022).

"The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and proceed with a fairness hearing." *McKeon v. Integrity Pizza LLC,* 2020 U.S. Dist. LEXIS 140513 at *4 (D. Colo., Aug. 6, 2020), quoting *Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006). "Preliminary approval of a class action settlement. . . is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Sec. Litig.,* 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013), quoting *Davis v. J.P. Morgan Chase & Co.,* 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011). A settlement should be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Rhodes v. Olson Assocs.,* 308 F.R.D. 664, 666 (D. Colo. 2015).

Following the December 1, 2018 amendment to Rule 23(e)(1)(B), the preliminary approval evaluation includes an assessment of whether it is likely that the court will be able to finally approve the settlement and certify the class. Rule 23(e)(1)(B).[3]

The proposed Settlement easily meets these standards.

---

[3] In connection with final approval, the Court will be asked to review the following core factors identified by Rule 23(e)(2): whether: (a) Plaintiffs and Plaintiffs' Counsel adequately represented the Class; (b) the Settlement was negotiated at arm's length; (c) the relief provided to the Class is adequate taking in to account (i) "the cost, risks, and delay of trial and appeal"; (ii) "the effectiveness of any proposed method of distributing relief to the class"; (iii) "the terms of any proposed award of attorney's fees" to plaintiffs' counsel; and (iv) any and all agreements between the settling parties; and (d) the proposal treats Class members equitably relative to each other.

### A. The Settlement is the Product of Serious and Informed Arm's-Length Negotiations Among the Parties

This litigation has been hard-fought by both sides since its inception. The Settlement was reached after Plaintiffs' thorough evaluation of the risks attendant to pursuing their claims against highly-skilled counsel for Zions Bank; and is the product of fair, honest, and vigorous negotiations among the Parties, under the supervision of an experienced mediator and with the guidance and input of experienced and informed counsel. Settlement negotiations were supervised by Mr. Meyer, a highly experienced mediator with a track record of facilitating settlements in complex class actions nationwide. Courts in this Circuit and elsewhere recognize that the involvement of an experienced mediator strongly supports the fairness of a proposed settlement. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 71039, at *16-17 (D. Colo. Sept. 28, 2006).

The Parties and their counsel were knowledgeable about the strengths and weaknesses of their cases before agreeing to the Settlement. Prior to filing the Complaint, Plaintiffs, through their counsel, conducted an extensive investigation into the facts that included a review of SEC, State of Utah Division of Securities, and Commodity Futures Trading Commission filings and news articles regarding the Silver Pool scheme. The Parties exchanged targeted discovery related to their claims and defenses in advance of the February 26, 2021 mediation. Then, the Parties prepared and exchanged comprehensive mediation submissions with each other and with Mr. Meyer in advance of the mediation, with exhibits, as well as briefs, motions, and orders, submitted to, or issued by the Court. The Parties participated in an all-day, formal mediation session, but the case did not settle.

In the following months, the Parties pursued aggressive discovery, that included serving numerous document requests, interrogatories, requests for admission, and third-party subpoenas,

and taking and defending depositions. In addition, on April 23, 2021, Plaintiffs filed a motion for leave to file a second consolidated amended complaint alleging additional in an attempt to revive their claims for aiding and abetting fraud and breach of fiduciary duty, and prepared a proposed complaint in connection with that motion. Zions Bank opposed that motion. When the Parties and their counsel reengaged in settlement negotiations in December 2021, they were knowledgeable about the strengths and weaknesses of their cases before agreeing to the Settlement. In addition, proposed Class Counsel, who have extensive experience in prosecuting class actions across the country, concluded that the Settlement is in the best interests of the Settlement Class. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." (internal quotations omitted)).

The fact that the Settlement is the product of an arm's-length negotiation overseen by an experienced mediator, has been approved by the Plaintiffs, with guidance and input from experienced and informed counsel, demonstrates that the process by which the Settlement was reached is procedurally fair. It is, therefore, presumptively fair, reasonable and adequate.

**B.      The Settlement has no Obvious Deficiencies and is Adequate Considering the Significant Risks of Continued Litigation**

The Settlement represents a beneficial outcome for the Settlement Class, and nothing in the Settlement's terms or the manner in which they were negotiated raises any obvious deficiencies that would impede preliminary approval. The Settlement provides for Zions Bank to pay $2.5 million in cash. The Settlement "falls within the range of possible approval," meaning the range of possible litigation outcomes, when its benefits are weighed against the risks that the Settlement Class could recover far less (or even nothing) if litigation were to continue. See MANUAL FOR COMPLEX LITIGATION, § 21.632**.**

Plaintiffs recognize the substantial risks to proving Zions Bank's liability. For example, after the Complaint was filed, Zions Bank filed a forty-six page motion to dismiss raising a series of substantive legal challenges including that Plaintiffs failed to plead facts demonstrating Zions Bank's actual knowledge of the of the Silver Pool scheme, Zions Bank did not substantially assist the scheme, the actions of the Zions Bank employee who allegedly assisted the scheme did not proximately cause Plaintiffs' losses, and Plaintiffs' breach of fiduciary duty and negligence claims fail for failure to show that Zions Bank owed a legal duty to non-customers.

Plaintiffs filed a fifty-page opposition to Zions Bank's motion explaining in detail how Plaintiffs adequately alleged each of the elements of their aiding and abetting, breach of fiduciary duty and negligence claims, and that Zions Bank's cited case law was distinguishable. Zions Bank then submitted a twenty-five page reply brief supporting the legal and factual bases for its motion.

After hearing argument, the Court issued a ruling agreeing with Zions Bank in substantial part and dismissing all but one of Plaintiffs' claims, dismissing Plaintiffs' claims for negligence, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and aiding and abetting fraud. In issuing its ruling, the Court conducted a detailed analysis of the facts and law, much of which centered on Plaintiffs' allegations of Zions Bank's knowledge of the Silver Pool. Of significance, the Court held that:

- Under Utah law, a bank does not owe a duty of care to non-customers. Accordingly, the Court dismissed Plaintiffs' negligence claim;

- Under Utah law, Zions Bank did not owe a fiduciary duty to its customer, Rust Rare Coin, so by extension, it did not owe a fiduciary duty to Plaintiffs. Accordingly, the breach of fiduciary duty claim was dismissed;

- Plaintiffs name only one individual, the branch manager of the Broadway branch where RRC banked, who may have known about Rust's unlawful activities. While that branch manager "need not have actual knowledge of each specific element of the underlying torts, he must at least have actual knowledge of those elements that

form the gravamen of the underlying torts";

- Plaintiffs' allegations fell short of showing that the branch manager knew Rust owed fiduciary duties to his investors;

- Plaintiffs' allegations fell short of showing that the branch manager knew about any representations made by Rust to Plaintiffs or any other.

Thus, Plaintiffs were left with a single claim, for aiding and abetting conversion to which Zions Bank raised a number of arguments undermining this claim.

Plaintiffs recognized that they faced other litigation risks including the substantial risk that the Court would deny their motion to file a second amended complaint and allow Plaintiffs to revive their claims for aiding and abetting fraud and breach of fiduciary duty. Plaintiffs also recognized the risk related to class certification, whereas Zions Bank indicated it would oppose a motion for class certification arguing that Plaintiffs could not show that common issues predominate. Lastly, Plaintiffs recognized the risk related to the proof of the Settlement Class's damages whereas Zions Bank indicated it would argue that Zions Bank's conduct did not cause Plaintiffs' losses, and regardless, many categories of investor losses should be eliminated from any damages calculation, including, among others, all deposits before Michael Hanson joined Zions Bank in April 2016.

In sum, the Parties strongly disagree on several key factual and legal issues central to the Action, and there is no guarantee Plaintiffs would prevail their motion for leave to amend to reinstate claims for aiding and abetting fraud and breach of fiduciary duty, a motion to certify the class, motions for summary judgment, or at trial. The Settlement enables the Settlement Class to recover a substantial sum without incurring the substantial risk that Zions Bank would prevail on these issues. All things considered, the Settlement is an excellent result for the Settlement Class,

particularly in view of these significant litigation risks. Plaintiffs and Proposed Class Counsel respectfully submit that preliminary approval is appropriate.

### C.      The Proposed Plan of Allocation Treats Settlement Class Members Equitably

The Settlement does not improperly grant preferential treatment to Plaintiffs or any segment of the Settlement Class. Rather, each member of the Settlement Class, including Plaintiffs, will receive a pro rata distribution from the Net Cash Settlement Amount based on the amount of their out-of-pocket losses as calculated by the Receiver based on information already submitted by each Settlement Class member in connection with the Receivership Action pursuant to the Plan of Distribution approved by the Court. Settlement Class members who failed to submit a timely claim in the Receivership Action will have an opportunity to submit a claim in connection with this Action.[4]

### VI.    THE LITIGATION SHOULD BE CERTIFIED AS A CLASS ACTION FOR SETTLEMENT PURPOSES

In granting preliminary approval, the Court should also certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Settlement Class is identified above.

### A.      The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

---

[4] The Agreement (with its exhibits) is the only agreement among the parties, apart from a standard, confidential agreement that sets the threshold by which Defendant may terminate the Settlement if exclusion requests exceed that threshold.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) and 23(e)(3).

claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1.     The Settlement Class Members are too Numerous to be Joined

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a).

Courts in the Tenth Circuit have certified classes ranging in size from tens to hundreds of thousands. *Beltran v. InterExchange, Inc.*, 2018 U.S. Dist. LEXIS 23940, *12 (D. Colo. Feb. 2, 2018); *Rex v. Owens*, 585 F.2d 432, 435 (10th Cir. 1978) ("Class actions have been deemed viable . . . where as few as 17 to 20 persons are identified as the class"); *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 504-05 (D. Kan. 2014) ("[C]lasses as small as twenty members can satisfy the numerosity requirement, and a good faith estimate of at least 50 members is a sufficient size to maintain a class action" (internal quotations omitted)). The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable. *Robidoux v. Celani,* 987 F. 2d 931, 935 (2nd Cir. 1993), citing 1 Herbert B. Newberg, *Newberg of Class Actions: A Manual for Group Litigation at Federal and State Levels,* §. 3.05 at 141-42 (2d ed. 1985).

Here, based on the work of the Receiver, it is estimated that the Settlement Class size contains over 600 Silver Pool scheme investors, which number easily satisfies numerosity.

### 2.     There are Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality requirement asks only that significant common issues of law or fact exist. *Queen Uno Ltd. Pshp. V. Coeur D'Alene Mones Corp.,* 183 F.R.D. 687, 691 (D.

Colo. 1998). This Action raises numerous common questions of law and fact, including whether RRC and the Rusts defrauded Plaintiffs and the other investors in the Silver Pool scheme, whether RRC and the Rusts violated the federal and state securities and/or commodities laws in connection with the Silver Pool scheme, whether RRC and the Rusts converted monies invested in the Silver Pool investment program, whether Zions Bank had knowledge of the fraudulent Silver Pool scheme, and RRC and the Rust's fraudulent and illegal activities, whether Zions Bank participated in and/or substantially assisted in the fraudulent Silver Pool scheme and the Rust's fraudulent and illegal activities, whether Plaintiffs and other Settlement Class members suffered damages as a result of Zions Bank's conduct, and whether Plaintiffs and the Settlement Class are entitled to damages, and if so, the amount of such damages. Courts in this District have found that similar questions of law and fact easily meet the commonality requirements. *See, e.g., In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 318 F.R.D. 435, 444 (D. Colo. 2015).

### 3.    Plaintiff's Claims are Typical of the Settlement Class

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "Typicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the Zions Bank's liability." *Crocs*, 306 F.R.D. at 686 (internal quotations omitted). "[P]rovided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198–99 (10th Cir. 2010). Here, Plaintiffs and the Settlement Class are all victims of the Silver Pool scheme. The claims of Plaintiffs and Settlement Class are based on the same  alleged  misrepresentations regarding the Silver Pool

scheme. Plaintiffs' claims and the claims of the Settlement Class are based on the same legal theories and would be proven by the same evidence, thus typicality is satisfied.

### 4.     Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two inquiries are relevant to determining whether adequacy is satisfied: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Crocs*, 306 F.R.D. at 688, quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002).

There is no conflict of interest between Plaintiffs and the proposed Settlement Class. Plaintiffs and the Settlement Class members suffered losses in connection with their investments in the Silver Pool Scheme. Thus, Plaintiffs and Settlement Class share the same interest in maximizing their recovery from Zions Bank. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Moreover, Plaintiffs and Class Counsel have, and will continue to, vigorously protect the interests of the Class. Plaintiffs and Class Counsel devoted significant time and resources to initiating, prosecuting, and negotiating a resolution to this Action. Class Counsel has extensive experience and expertise in prosecuting complex litigation and class action proceedings throughout the United States. See, firm resume of Rosca Scarlato, LLC. Dec. Ex. 3.

**B.     The Settlement Class Satisfies the Requirements of Rule 23(b)**

Rule 23(b)(3) authorizes class certification if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1.   Common Legal and Factual Questions Predominate**

The predominance test is "readily met" in cases such as this that involve a common course of conduct impacting the Class Members. See *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also Crocs*, 306 F.R.D. at 689; *Crocs*, 306 F.R.D. at 689; *In re United Telecomms., Inc. Sec. Litig.*, 1992 WL 309884, at *3 (D. Kan. Sept. 15, 1992) ("Where plaintiffs allege a common nucleus of misrepresentations, material omissions, and market manipulation, the common questions predominate over any differences between individual class members with respect to damages, causation, and reliance."). Indeed, as the above analysis of Plaintiffs' allegations under Rule 23(a)(2)'s commonality standard demonstrates, there are numerous questions of law and fact common to Plaintiffs and the proposed Settlement Class, including whether RRC and the Rusts violated the federal and state securities and/or commodities laws in connection with the Silver Pool scheme, whether RRC and the Rusts converted monies invested in the Silver Pool investment program, whether Zions Bank had knowledge of the fraudulent Silver Pool scheme, and RRC and the Rust's fraudulent and illegal activities, whether Zions Bank participated in and/or substantially assisted in the fraudulent Silver Pool scheme and the Rust's fraudulent and illegal activities, whether Plaintiffs and other Settlement Class members suffered damages as a result of Zions Bank's conduct, and whether Plaintiffs and the Settlement Class are entitled to damages, and if so, the amount of such damages.

### 2.     A Class Action is Superior to Other Methods of Adjudication

Settlement of this Action "is a superior method for resolving this dispute" as it "avoids duplicative litigation, saving both plaintiffs and Zions Banks significant time and legal costs to adjudicate common legal and factual issues" and "because individual recovery for these claims is likely too small to provide an incentive for individual class members to adjudicate individual claims." *Crocs*, 306 F.R.D. at 689-90.  In investor fraud cases, the class action device is usually the superior method by which to redress injuries to a large number of individual plaintiffs in light of the large and geographically dispersed nature of shareholder classes, the inefficiency of multiple lawsuits and the size of individual recoveries in comparison to the costs of litigation. *See e.g.*, *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) ("as a general rule," securities fraud cases "easily satisfy the superiority requirement. . ." (internal quotations omitted)). That rationale applies equally here.

### VII.    THE NOTICE AND CLAIMS PROCESS SHOULD BE APPROVED

The proposed Notice advises Settlement Class members of: (i) the pendency of the Action as a class action; (ii) the essential terms of the Settlement; (iii) the proposed Settlement Distribution Plan; and (iv) information regarding Class Counsel's motion for Attorneys' Fees and Expenses Award and request for an Incentive Award. The proposed Notice also provides specifics on the date, time and place of the Final Approval Hearing and sets forth the procedures, as well as deadlines, for seeking exclusion from the Settlement Class, for objecting, and for submitting a Claim Form.

As outlined in the Settlement Agreement, Class Counsel will notify Settlement Class members of the pendency of the action and the proposed Settlement by causing the Notice Provider, Strategic Claims Services, to distribute the Notice via direct mail and email to Settlement Class Members, virtually all of whom can be identified through the records of the Receiver in the

Rust Rare Coin Receivership,[5] as explained below. In addition, the Notice Provider will post the Notice on a case specific landing page on its website, and Class Counsel will request that the Class Representatives post the Notice on various chat rooms that the RRC investors use to communicate.

Based on discussions with counsel for the Receiver, the Parties learned that the Receiver has already conducted a claims process targeted to the same investors who are members of the Settlement Class. Decl. ¶ 6. Accordingly, the Receiver has in his records contact information, including mailing addresses for most, if not all of the Settlement Class. *Id.* In addition to physical addresses, the Receiver has collected email addresses for most of those Settlement Class members and has shared the mailing and email addresses with the Parties for purposes of providing Notice to the Class. *Id.*

In addition, in connection with his claims process,[6] the Receiver has already gathered the claims information from most, if not all of the Settlement Class sufficient to determine their losses from their investment in the Silver Pool scheme. Decl. ¶ 7. The Parties and the Receiver agreed that substantial efficiencies and cost saving to the Class can be obtained by leveraging the work the Receiver has already done in connection with his claims process. Decl. ¶ 8. Accordingly, the Receiver has agreed to serve as Settlement Distribution Administrator in connection with the claims process in this Action; and on June 24, 2022, Judge Campbell approved the Receiver's proposed expanded role.[7] Decl. Ex. 5 and 6. In that regard, the Receiver has agreed to calculate

---

[5] The Receiver's action (the "Receivership Action") is pending before Judge Campbell at *Commodity Futures Trading Commission, et al., v. Rust Rare Coin Inc. et al.*, No. 18-CV00892 (D. Utah).

[6] The Receiver's claims process had a claims submission deadline of October 4, 2019. See, Receivership Action, ECF 258, p. 2-3. In connection therewith, the Receiver coordinated the delivery of over 4,000 hard-copy claim packets to potential claimants, including investors. *Id.* As of October 31, 2022, the date of the Receiver's Sixteenth Quarterly Status Report, the Receiver received approximately 627 claim forms from potential claimants. *Id.,* ECF 484.

[7] The Receiver previously disclosed its prior representation of Zions Bank in connection with unrelated matters to Judge Campbell. See Receivership Action, ECF 244. Further, in its Motion

the Settlement Class members' Alleged Loss pursuant to a Settlement Distribution Plan which will be based on the claims documentation he already received, pursuant to a Notice of Settlement Distribution Plan which will be submitted to this Court by Class Counsel and the Receiver for approval. *Id.*

The Notice explains that Settlement Class members who submitted a timely claim form in connection with the Receivership Action, and whose claim was allowed, do not need to submit an additional claim form in this Action. Their claim and recovery will be based on the claim form already submitted to the Receiver. The Notice further explains that Settlement Class members who did not submit timely claims, or who did not submit any claim at all, can file a claim form no later than sixty (60) days after the Notice date, and informs them how to obtain a claim form.

The form and manner of providing Notice to the Settlement Class satisfy the requirements of due process and Rule 23. The Notice is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tennille v. Western Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974)). Moreover, Class Counsel has a physical address for all Class Members and email addresses for most. Direct mail and email in this situation constitutes the best notice practicable.

---

Seeking Approval for Receiver to Assist in Distribution of Class Action Settlement, the Receiver represented that because Zions Bank will not have a role in the distribution of the Settlement Fund once paid and because the Receiver does not currently represent Zions Bank, the Receiver did not perceive its role in the distribution of such funds to present a conflict. In an abundance of caution, the parties in the Class Action waived any potential conflicts arising from the Receiver's performance of its duties described in the motion. *Id.* ECF 462, p. 4, n. 10. Judge Campbell granted the motion and authorized the Receiver to serve as Settlement Distribution Administrator in this Action. *Id.* ECF 467.

## VII.   PROPOSED SCHEDULE AND REQUEST FOR FAIRNESS HEARING

In connection with preliminary approval of the Settlement, Plaintiffs request the Court schedule a Final Approval Hearing approximately 120 days after Preliminary Approval, or as soon as is convenient for the Court. A prompt Final Approval Hearing will give certainty to Settlement Class members. The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the parties and set forth in the proposed Preliminary Approval Order:

| Action | Date |
|---|---|
| Settlement Notice Date | No later than 30 days after Preliminary Approval Order entered. |
| Class Counsel's Application for a Fee and Inventive Award | No later than 40 days prior to Final Approval Hearing. |
| Deadline for Class Members to object or exclude themselves from the Class | At least 60 days after the Settlement Notice Date and 21 calendar days prior to the Final Approval Hearing |
| Deadline for submitting papers in support of final approval of Settlement, Notice provider Declaration, and Response to Objections | Ten days prior to Final Approval Hearing |
| Deadline for submitting Claims Forms | Sixty days after the Settlement Notice Date |
| Final Approval Hearing | 120 days after Preliminary Approval |

## IX.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement; certify the Settlement Class and appoint Plaintiffs as class representatives and Class Counsel as class counsel, for purposes of the Settlement; approve the form and manner of providing Notice of the Settlement to the Settlement Class; and enter the accompanying proposed Preliminary Approval Order.

Respectfully submitted this 23rd day of November 2022.

*/s/ Samuel Adams*

Samuel Adams
ADAMS DAVIS P.C.
35 Broadway, Suite 203
Salt Lake City, UT 84101
Telephone:     (801) 532-9500
Email:  sam@adamsdavis.com

*Local Counsel for Plaintiffs*

Alan L. Rosca (*pro hac vice*, ECF 14)
Paul J. Scarlato (*pro hac vice*, ECF 175)
ROSCA SCARLATO, LLC
Eight Tower Bridge, 161 Washington St
Conshohocken, PA 19428
23250 Chagrin Blvd., Suite 100
Beachwood, OH 44122
Telephone:     (484) 342-0700
Email:  arosca@rscounsel.law
          pscarlato@rscounsel.law

*Proposed Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of November, 2022, a true and correct copy of the foregoing Unopposed Motion Of Plaintiffs For Preliminary Approval Of Settlement, Certification of Class, and Appointment of Class Representative and Class Counsel has been filed and served electronically via CM/ECF, which will be sent electronically to all counsel of record.

*/s/ Samuel Adams*