Samuel Adams
ADAMS DAVIS P.C.
35 W. Broadway, Suite 203
Salt Lake City, UT 84101
Telephone: (801) 532-9500
Email: same@adamsdavis.com

*Counsel for Plaintiffs and the Class*
*[Additional Counsel on Signature Page]*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TRAVIS GREGORY, NICOLE GREGORY, ALAN LAMBERT, and ROBERT BAKER, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br>v.<br><br><br>ZIONS BANCORPORATION,<br><br>         Defendant. | **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND PLAN OF ALLOCATION**<br><br><br>Case No. 2:19-cv-00015-HCN-DBP<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Dustin B. Pead |

# **Table of Contents**

I.  INTRODUCTION ................................................................................................... 2

II.  BACKGROUND .................................................................................................... 3

  A.  The Settlement was Reached at Arms-Length After Extensive Discovery and Analysis ... 3

  B.  Plaintiffs' Compliance with the Preliminary Approval Order ............................................ 4

III  LEGAL STANDARD…………………………………………………………………...7

IV.  THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL…..………....8

  A.  The proposed Settlement Warrants Final Approval Because It is Fair, Reasonable and Adequate………………………………………………………………….…....8

    1. The Settlement is the Product of Serious and Informed Arm's Length Negotiations........... Between the Parties…......................................................................................9

    2. Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt…................................................................................…11

    3. The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief…………….….................................................................……13

    4. The Class Was Adequately Represented and in the Judgment of All Parties the Settlement is Fair, Adequate and Reasonable.......................................................13

    5. The Proposed Award of Attorneys' Fees and Reimbursement of Litigation Expenses is Appropriate………...........................................................15

    6. Side Agreement Disclosure..................................………………………………….15

  B.  The Plan of Allocation is Fair, Reasonable and Adequate Because it Treats all Class Members Equitably and the Method of Distribution Will be Highly Effective.....……...16

  C.  Plaintiffs' Notice of the Settlement Satisfied the Requirements of Rule 23, and Due Process….......................................................................……………..17

  D.  The Lack of Any Objections Warrants Final Approval…......…………………………18

  E.  Final Approval of Class Certification……………………....................……………19

V.  CONCLUSION………………………………………………………..………21

## **TABLE OF AUTHORITIES**

Cases

*Am. Home Assur. Co. v. Cessna Aircraft Co.*, 551 F.2d 804 (10th Cir. 1977) .............................. 8

*Belote v. Rivet Software, Inc.*, 2014 U.S. Dist. LEXIS 110684 (D. Colo. Aug. 11, 2014)............. 9

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981) .......................................................................... 11

*D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001)*.............................................................. 11

*Diaz v. Romer*, 801 F. Supp. 405 (D. Colo. 1992) ......................................................................... 9

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 Fed. App'x. 752 (10th Cir. 2020) ......... 18

*Farley v. Family Dollar Stores, Inc.*, 2014 WL 5488897 (D. Colo. Oct. 30, 2014)..................... 14

*Gordon v. Chipotle Mexican Grill, Inc.*, 2019 U.S. Dist. LEXIS 215430 (D. Colo. Dec. 16, 2019)

................................................................................................................................................. 17

*Gottlieb v. Wiles, 11 F.3d 1004 (10th Cir. 1993)* ........................................................................ 11

*Hefler v. Wells Fargo & Co.,* Case No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292 (N.D.

Cal. Sept. 4, 2018) ................................................................................................................ 16

*Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ........................ 19

*In re Crocs Sec. Litig.*, 2013 WL 4547404 (D. Colo. Aug. 28, 2013)......................................... 13

*In re Crocs, Inc. Sec. Litig.* 2014 U.S. Dist. LEXIS 134396 (D. Colo. Sept. 18, 2014).............. 15

*In re Crocs, Inc. Secs. Litig.,* 306 F.R.D. 672 (D. Colo. 2014) ................................................ 7, 13

*In re Crocs, Inc. Secs. Litig.,* 306 F.R.D. 672 (D. Colo. 2014), ..................................................... 7

*In Re Integra Realty Resources, Inc.,* 354 F.3d 1246 (10th Cir. 2004). ......................................... 7

*In re King Res. Co. Sec. Litig., 420 F. Supp. 610 (D. Colo. 1976)*............................................... 11

*In re Molycorp, Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 215174 (D. Colo. Feb. 15, 2017)........... 9

*In re N.M. Nat. Gas Antitrust Litig., 607 F. Supp. 1491  (D. Colo.1984)* ................................... 11

*In re Skilled Healthcare Group, Inc.,* 2011 U.S. Dist. LEXIS 10139 (C.D. Cal. Jan. 26, 2011) . 19

*Lucas v. Kmart Corp.*, 234 F.R.D. 688 (D. Colo., 2006) ................................................. 9

*Martin v. AmeriPride Servs.*, 2011 U.S. Dist. LEXIS 61796 (S.D. Cal. June 9, 2011) ............... 19

*Martin v. AmeriPride Servs.*, 2011 U.S. Dist. LEXIS 61796 (S.D. Cal. June 9, 2011) ............... 19

*McNeely v. Nat'l Mobile Health Care, LLC*, 2008 U.S. Dist. LEXIS 86741 (W.D. Okla. Oct. 27, 2008) ..................................................................................................... 9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D.523 (C.D. Cal. 2004) .................. 19

*O'Dowd v. Anthem*, 2019 U.S. Dist. LEXIS 153610, (D. Colo. Sept. 9, 2019) ........................... 7

*Paulson v. McKowen, et al.,* 2023 U.S. Dist. LEXIS 43717 (D. Colo. March 15 2023) ........ 14, 20

*Peace Officers' Annuity & Ben. Fund of Ga. v. DaVita Inc.,* 2021 U.S. Dist. LEXIS 131699 (D. Colo. July 15, 2021) ............................................................................... 15

*Ramos v. Banner Health*, 2020 U.S. Dist. LEXIS 210056 (D. Colo. Nov. 10, 2020) .................. 9

*Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180 (10th Cir. 2002) ........................... 7, 11

*Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, 749 F.2d 1451 (10th Cir. 1984) ......................... 8

*See Rodriguez v. Hermes Landscaping, Inc.*, 2020 U.S. Dist. LEXIS (D. Kan. June 18, 2020) .... 7

*Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273 (D. Colo. 1997) ..................................... 8

Plaintiffs and Court-appointed Class Representatives for the Settlement Class for settlement purposes, Travis Gregory, Nicole Gregory, Alan Lambert and Robert Baker ("Plaintiffs" or "Class Representatives"), respectfully submit this memorandum in support of their motion (the "Final Approval Motion") for (i) final approval of the proposed settlement (the "Settlement") of the above-captioned class action (the "Action") on the terms and conditions set forth in the Settlement Agreement dated November 22, 2022 (the "Settlement Agreement");[1] (ii) approval of the proposed Plan of Allocation for Distribution of the Net Cash Settlement Amount; and (iii) final certification of the Settlement Class.

## I.    INTRODUCTION

Plaintiffs, on behalf of themselves and the Settlement Class, have agreed to settle all claims asserted or that could have been asserted in the Action against Zions Bank Bancorporation, ("Zions Bank" or "Defendant")[2] in exchange for $2.5 million in cash (the "Settlement Amount" or "Settlement Fund"). As appointed Class Representatives for the Settlement Class for Settlement purposes, Plaintiffs presented the proposed Settlement to the Court in connection with Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Certification of Class, and Appointment of Class Representatives and Class Counsel ("Preliminary Approval Motion") filed on November 23, 2022. ECF 197. Plaintiffs' Preliminary Approval Motion was granted on December 8, 2022. ECF 200. If finally approved pursuant to Federal Rule of Civil Procedure 23, as requested, the Settlement will resolve the Action conclusively, and on a class-wide basis. The

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Paul J. Scarlato in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Certification of Class, and Appointment of Class Representatives and Class Counsel. ECF 198-1. All capitalized terms not otherwise defined herein have the meaning set forth in the Settlement Agreement.
[2] Plaintiffs and Zions Bank are referred to collectively as the "Parties."

Settlement, if approved, would release all claims pleaded by Class Representatives. The Settlement should receive final approval from this Court in large part because it provides substantial relief to the Settlement Class in light of the considerable and substantial risks of continued litigation, in what has been highly contested litigation lasting over four years. Plaintiffs' principal reason for entering into the Settlement is the cash benefit provided for the Settlement Class, balanced against the significant risk that a smaller recovery—or indeed, no recovery—might be achieved after additional steps in the litigation that could last for years.

Plaintiffs have separately moved for an award of attorneys' fees, Incentive Awards and reimbursement of litigation expenses by motion filed March 15, 2023 (the "Fee Application"). ECF 207. The Court Ordered that any objections to the Settlement or Fee Application must be filed no later than April 3, 2023, by submitting a written letter to the Court-approved Notice Provider. ECF 200 ¶18. Importantly, that date has passed and *no* objections to the Settlement or Fee Application were received. That no Settlement Class Member has lodged an objection to the Settlement, or the Fee Application underscores their genuine fairness and propriety, which weighs in favor of final approval by the Court. For the bases set forth herein, plaintiffs respectfully request that the Court grant final approval of the Settlement.

## II.    BACKGROUND

### A.  The Settlement Was Reached at Arms-Length After Extensive Discovery and Analysis

The Settlement was reached with a thorough understanding of the facts and law and the risks of continued litigation based on the facts Plaintiffs developed through their investigation and discovery, and thus would likely be in a position to introduce as evidence at trial. The history of the Action, and the extensive litigation efforts by Plaintiffs' counsel that led to this Settlement, and

the terms of the Settlement are set forth in detail in Plaintiffs' Preliminary Approval Motion (ECF 197) and Fee Application. ECF 207. Accordingly, Plaintiffs will not repeat those detailed descriptions herein, but note that those efforts included, among other things, an extensive investigation conducted by Plaintiffs' counsel, the review and analysis of tens of thousands of pages of documents obtained from Defendant, the Receiver, third parties, and via other lawsuits, and a comprehensive search that included multiple meetings, phone calls, interviews and depositions of witnesses whose testimony Plaintiffs' counsel believed might support Plaintiffs' claims. Those efforts also included extensive settlement negotiations, including mediation with a highly experienced neutral, Robert Meyer, Esquire of JAMS, that involved the preparation and exchange of detailed mediation statements. After the mediation failed, continued discovery and settlement negotiations with the assistance of the mediators ultimately led to the Settlement.

## B. Plaintiffs' Compliance with the Preliminary Approval Order

The Court granted Plaintiffs' Preliminary Approval Motion on December 8, 2022 ("Preliminary Approval Order"). ECF 200. Among other things, the Preliminary Approval Order directed that notice of the Settlement ("Notice") be given to the Settlement Class based on the "showing that the Court will likely be able to: (i) approve the Settlement under the Federal Rules of Civil Procedure 23(e)(2), and (ii) certify the Class pursuant to Federal Rule of Civil Procedure 23(b)(3)." *Id.* at ¶3. In granting Preliminary Approval, the Court made findings that there is cause to believe that:

- The Agreement is fair, reasonable, and adequate, and within the range of possible approval;

- The Agreement has been negotiated in good faith at arms' length between experienced attorneys familiar with the legal and factual issues of the case; The form of Notice is appropriate and warranted; and

- The Notice program ("Notice Plan") proposed by Class Counsel constitutes the best notice practicable under the circumstances, and satisfies due process and Federal Rule of Civil Procedure 23.

*Id.*

In addition, the Court:

- Conditionally certified the Settlement Class for settlement purposes only, consisting of; "All persons and entities who invested in the Silver Pool and were harmed in connection with such investment." appointed Plaintiffs as Class Representatives of the Settlement Class;[3] *Id.* at ¶4.

- Appointed Plaintiffs as Class Representatives of the Settlement Class pursuant to Federal Rule of Civil Procedure 23. *Id.* at ¶5.

- Appointed Rosca Scarlato, LLC as Class Counsel, pursuant to Federal Rule of Civil Procedure 23. *Id.* at ¶6.

- Scheduled a Final Approval Hearing for April 24, 2023 at 1:00 P.M. and set a schedule for filing papers in support of Class Counsel's Fee Application of March 15, 2023 and for this motion in support of final approval of April 14, 2023. *Id.* at ¶¶7, 25;

- Appointed Strategic Claims Services as Notice Provider; *Id.* at ¶¶8, 20;

- Approved the Rust Rare Coin Receiver's role as Settlement Distribution Administrator; *Id.* at ¶¶9, 20;

- Approved the proposed plan and date for giving Notice to the Settlement Class, which date was extended one week upon Plaintiffs' request (ECF 202), and directed the Notice Provider to file proof that Notice was provided in accordance with the Notice plan by April 14, 2023; *Id.* at ¶¶10-11, 25; and

---

[3] Excluded from the Settlement Class are (1) Zions Bank; (2) any person, firm, corporation, or other entity related to or affiliated with Zions Bank or in which Zions Bank has or had a controlling interest, (3) Gaylen Rust, Denise Rust, Joshua Rust, and their immediate family members; (4) all other employees of Rust Rare Coin, Inc.; (5) the legal representatives, affiliates, heirs, successors-in-interest, or assigns of any such excluded person; and (6) the currently-named plaintiffs in the lawsuit pending in the Third Judicial District Court of Salt Lake County, State of Utah, as *North Valley Partners, et al. v. Zions Bancorporation, N.A.* Civil No. 210902187. Also excluded from the Settlement Class will be the persons and/or entities who validly request exclusion from the Settlement Class within the time period set by the Court in the Preliminary Approval Order.

- Established a date for any objections to the Settlement or to opt-out of the Settlement Class of April 3, 2023, and set forth the process for doing so. *Id.* at ¶¶12-13, 18, 25.

Plaintiffs fully complied with the Preliminary Approval Order. First, Notice was timely mailed and emailed pursuant to the Notice Plan and the dates approved by the Court. See Declaration of Cornelia Vieira Concerning: (A) Mailing of the Notice to Class Members: (B) Mailing of the CAFA Notice; and (C) Report on Objections and Exclusions dated April 14, 2023 ("Vieira Decl. ¶__") at ¶4-5. In addition, on January 20, 2023, the Notice Provider created a Settlement webpage on its website at www.strategicclaims.net/Zions that contained the case deadlines, and important documents such as the Notice, the Notice of Settlement Distribution Plan, the Settlement Agreement, and Preliminary Approval Order. Vieira Decl. ¶7. In addition, Class Counsel filed their Fee Application by the March 15, 2023 deadline set forth in the Preliminary Approval Order. See ECF 207. The Fee Application was promptly uploaded to the Settlement webpage.

Importantly, the April 3, 2023 deadline to object to the Settlement or opt-out of the Settlement Class has passed and *not one objection to the Settlement or Fee Application has been received*. Vieira Decl. ¶8. Six requests for exclusion from the Settlement Class were received. Vieira Decl. ¶9. However, three of those six were from a related group that has since rescinded those requests and now intends to participate in the Settlement. Two of the remaining three were from parties to another lawsuit currently pending against Zions Bank, and the remaining request was from a trade creditor to Rust, and not a Settlement Class Member. Plaintiffs respectfully suggest that the overwhelmingly positive reaction of the Class to the Settlement strongly supports final approval under the Federal Rules of Civil Procedure 23(e) and Tenth Circuit precedent.

### III.    LEGAL STANDARD

Pursuant to Rule 23(e)(2), a class action settlement should be approved if the Court finds it "fair, reasonable, and adequate." "To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibly of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *In re Crocs, Inc. Secs. Litig.,* 306 F.R.D. 672, 690 (D. Colo. 2014), citing, *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002); *see also In Re Integra Realty Resources, Inc.,* 354 F.3d 1246, 1266 (10th Cir. 2004).

Additional points of consideration include whether: (1) plaintiff and counsel have adequately represented the class; (2) the settlement was negotiated at arm's-length; and (3) the relief for the class is adequate, taking into account (a) the costs, risks, and delay of trial and appeal, (b) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (c) the terms of any proposed fee award, including timing of payment, and (d) any agreement required to be identified under Rule 23(e)(3); and (4)the proposal treats class members equitably relative to each other. *See Rodriguez v. Hermes Landscaping, Inc.*, 2020 U.S. Dist. LEXIS, at *5 (D. Kan. June 18, 2020) (citing the 2018 amendments to Fed. R. Civ. P. 23(e)(2)); *see also O'Dowd v. Anthem*, 2019 U.S. Dist. LEXIS 153610, at *36-37 (D. Colo. Sept. 9, 2019) (the court "first addresses the relevant factors the Tenth Circuit applies [] and then, to the extent that they do not overlap, considers the factors identified in Rule 23(e)(2)").

The Settlement meets all these criteria and should be approved.

### IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.    The Proposed Settlement Warrants Final Approval Because It Is Fair, Reasonable, and Adequate

Plaintiffs' Motion for Preliminary Approval demonstrated the fairness, reasonableness, and adequacy of the Settlement for purposes of preliminary approval. See ECF 197. In recognition of this, the Court granted Preliminary Approval of the Settlement. ECF 200. In addition, the Declaration of Paul J. Scarlato in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, and Plan of Allocation[4] ("Scarlato Decl. __") further describes the litigation and the basis for the Settlement. In pertinent part, the Scarlato Decl. demonstrates the complexity of the case and the extensive work that was performed to arrive at the proposed Settlement. See Scarlato Decl. ¶¶5-21

The facts supporting the Court's conclusions and the reasons for granting Preliminary Approval have not changed. Accordingly, the Court should reaffirm its holding and grant final approval of the Settlement. This is especially so considering that courts in the Tenth Circuit have long held that the "inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims." *Am. Home Assur. Co. v. Cessna Aircraft Co*., 551 F.2d 804, 808 (10th Cir. 1977); *see also Sears v. Atchison, Topeka & Santa Fe Ry. Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997). In complex class actions, such as this Action, settlements between the parties are all the more encouraged. *See Belote v. Rivet Software, Inc.*, 2014 U.S. Dist. LEXIS 110684, at *7 (D.

---

[4] The Scarlato Decl. submitted herewith is substantially similar to the Declaration of Paul J. Scarlato in Support of Plaintiffs' Motion for An Award of Attorneys' Fees, Incentive Awards, and Reimbursement of Litigation Expenses submitted at ECF 207. Plaintiffs' Final Approval Motion is supported by many of the same facts that are repeated here for the Court's convenience.

Colo. Aug. 11, 2014) ("settlements in class actions are favored"); *Diaz v. Romer*, 801 F. Supp. 405, 407 (D. Colo. 1992) (in approving class action settlement, the court explained that a "consensual resolution of a dispute is always preferred"), *aff'd*, 9 F.3d 116 (10th Cir. 1993). The "presumption in favor of voluntary settlement agreements is especially strong here, "where substantial judicial resources can be conserved by avoiding formal litigation." *See Ramos v. Banner Health*, 2020 U.S. Dist. LEXIS 210056, at *9 (D. Colo. Nov. 10, 2020)

### 1.    The Settlement Is the Product of Serious and Informed Arm'-Length Negotiations Between the Parties

"The fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves.'" *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 U.S. Dist. LEXIS 86741, at *32-33 (W.D. Okla. Oct. 27, 2008). Where a settlement results from arm's-length negotiations between experienced counsel, "the Court may presume the settlement to be fair, adequate and reasonable." *O'Dowd*, 2019 U.S. Dist. LEXIS 153610, at *37, quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo., 2006). Moreover, utilization "of an experienced mediator [] supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved." *In re Molycorp, Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 215174, at *13 (D. Colo. Feb. 15, 2017)

As set forth in the Preliminary Approval Motion and Scarlato Decl., this Action has been hard fought by both sides since its inception. See ECF 197 at p. 11; Scarlato Decl. ¶¶5-11. The Parties reached the proposed Settlement after extensive litigation by experienced counsel that

included extensive motion practice and discovery. *Id.* Such motion practice included Zions Bank's motion to dismiss, which successfully defeated all of Plaintiffs' claims but for the sole claim of aiding and abetting conversion. *See id*. Following the Court's ruling, Plaintiffs' counsel embarked on an extensive factual investigation, reviewing thousands of pages of document obtained from Defendant, the Receiver, third parties, and other lawsuits via discovery, and included a comprehensive search for witnesses that might have information regarding Zions Bank's connection to the Rust scheme. See e.g., Scarlato Decl. ¶9. The Parties did not reach a Settlement until they had a fair consideration of the strengths and weaknesses of their claims. *See In re Crocs,* 306 F.R.D. at 690.

Moreover, Plaintiffs and Defendant used an independent, third-party mediator to facilitate their settlement negotiations. The mediator was Robert Meyer, Esquire of JAMS, a well-respected mediator. Scarlato Decl. ¶12. *See In re Crocs, Inc. Sec. Litig*., 306 F.R.D. at 679, 690 (D. Colo. 2014) (approving settlement and noting that the parties "engaged in extensive negotiations and mediation sessions for over a year" in front of a mediator "who has extensive experience mediating complex cases.").

The mediation process was conducted with the benefit of discovery and extensive pre-mediation submissions. See Scarlato Decl. ¶ 13. The mediation statements outlined the strengths and weaknesses of Plaintiffs' claims, and the proof Plaintiffs developed. *Id*. The February 21, 2021 mediation session lasted an entire day. *Id.* However, the Action did not settle. *Id.* The Parties reached the Settlement months after the mediation session with Mr. Meyer's assistance and after substantial additional discovery, *Id.* ¶ 14.

The arm's-length nature of the parties' negotiations and the active involvement of an independent mediator, such as Mr. Meyer, provide strong support for approval of the Settlement.

See *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"). Mr. Meyer's involvement in the mediation process demonstrates fair, honest, and arm's length negotiations in the settlement negotiation. While the authority to grant or deny approval of a proposed settlement lies within the sound discretion of the Court, *see Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d at 1187; *Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), courts typically defer to the judgment of the parties who negotiated the settlement, see Carson v. Am. Brands, Inc., 450 U.S. 79, 88 n.14 (1981); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) (the court "need not, and should not, decide the merits of the controversy"); see also *In re N.M. Nat. Gas Antitrust Litig.*, 607 F. Supp. 1491, 1497 (D. Colo.1984) ("[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole is fair, reasonable and adequate to all concerned."). Thus, the manner in which the parties came to the proposed Settlement provides the Court with a sound basis to rely on their judgment in granting approval.

### 2. Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of the Litigation in Doubt

Here, "serious questions of law and fact exist where disputes between the parties…could significantly impact this case if it were litigated." *O'Dowd*, 2019 U.S. Dist. LEXIS 15361, at \*38 (citation omitted); *see also Rodriguez v. Hermes Landscaping, Inc.*, 2020 U.S. Dist. LEXIS 106819, at \*7-8 (D. Kan. June 18, 2020) ("'whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt' and 'whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive

11

litigation'"—"largely overlap" with Rule 23(I)(2)(C)(i)). As detailed in the Scarlato Decl., before the Settlement was reached, Defendant raised credible defenses to the merits of Plaintiffs' claims, which could have resulted in either a substantially lower recovery or none at all. See Scarlato Decl. ¶¶23-28 (describing the legal challenges raised by Defendant). In fact, the Court dismissed all but one of Plaintiffs' claims, leaving a single claim for aiding and abetting conversion. *Id.* ¶25. Zions Bank also raised several arguments undermining that claim, and as to the amount of damages, if any, that would be available to Plaintiffs if that sole legal claim were successful. *Id.* More specifically, Zions Bank maintained that in order to recover, Plaintiffs would need to prove actual knowledge of conversion by one employee of the Bank, and even then, the maximum recovery available to Plaintiffs under this sole legal claim would be severely limited to the monies actually converted through the accounts that held investor funds. *Id.* In other words, the Bank maintained that it cannot be responsible for the conversion of money that did not flow through those accounts, and the amount of money that did flow through those accounts was far, far less than the amount invested through the Silver Pool. *Id.*

Plaintiffs also recognized that they faced a significant risk that the Court would deny their motion to file a second amended complaint, (ECF 90), and allow Plaintiffs to revive their claims for aiding and abetting fraud and aiding and abetting breach of fiduciary duty. Scarlato Decl. ¶26.

In addition, the Settlement eliminates the risks related to class certification, in light of Defendant's repeated assertion that Plaintiffs could not show that common issues predominate. *Id.* Lastly, the Settlement eliminates the risk related to proof of damages. *Id.* Plaintiffs certainly would have faced challenges to their damages estimate and Zions Bank indicated it would argue that its conduct did not cause Plaintiffs' harm, and many categories of investor losses should be eliminated, including, among others, all deposits before Michael Hanson began serving as

Broadway Branch Manager in April 2016. *Id.* If litigation continued, the Settlement Class would still need to overcome the various legal defenses and procedural hurdles to survive any dispositive or certification motions or recover at trial. *Id.*

### 3. The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief

In assessing a settlement, courts in this Circuit weigh the recovery "against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *O'Dowd*, 2019 U.S. Dist. LEXIS 153610, at *39. This factor weighs in favor of approval. As set forth above, Plaintiffs faced substantial litigation risks if this Action continued to be litigated, including the risk of no recovery at all. The prospect of a cash recovery now outweighs the time and costs of continued litigation considering the prospects for recovery. *See In re Crocs Sec. Litig.*, 2013 U.S. Dist. LEXIS 122593, at *43 (D. Colo. Aug. 28, 2013) ("the Court finds that immediate recovery outweighs the time and costs inherent in complex . . . litigation, especially when the prospect is some recovery versus no recovery").

Thus, the Settlement provides a very good outcome for the in the near term instead of years of additional litigation with uncertainty over the outcome. Courts readily approve class action settlements representing similar percentages of recoverable damages. *See*, *e.g., Crocs,* 306 F.R.D. at 691 (approving settlement recovery of 1.3% of damages as it was "in line with the median…").

### 4. The Class Was Adequately Represented, and in the Judgment of All Parties, the Settlement Is Fair, Adequate, and Reasonable

Plaintiffs have adequately represented the interests of the Settlement Class by closely monitoring and participating in this litigation from the outset through resolution. Plaintiffs were in regular contact with Class Counsel about the progress of the Action; Plaintiffs took an active role in discussions about the claims and strategies; Plaintiffs willingly participated in discovery

producing documents and sitting for depositions. See Scarlato Decl. ¶¶17-18 and Exhibits 1-4 to ECF 207 (Declarations of Class Representatives). Plaintiffs also played an important role in the settlement negotiations, closely evaluated the proposed Settlement and recommended that it be approved. See Scarlato Decl. ¶17 and Exhibits 1-4 to ECF 207.

Moreover, Plaintiffs' claims here are typical of the claims of the Settlement Class because all of the Settlement Class Members invested in the Silver Pool and suffered damages as a result. Therefore, Plaintiffs' and the Settlement Class's claims are subject to the same burden of proof. Plaintiffs also has no antagonistic interests; rather, Plaintiffs' interest in obtaining the largest-possible recovery in this Action was firmly aligned with all Settlement Class Members. *See Crocs*, 306 F.R.D. at 688 (approving settlement where, as here, there is "no evidence that one set of class members will benefit from the settlement to the detriment of another set of class members").

Here, Plaintiffs retained counsel who are highly experienced in prosecuting class actions against banks arising out of Ponzi schemes, and who have a long, successful track record of adequately representing large and diverse groups of investors in similar cases. *See*, *e.g.*, Resume of Class Counsel attached as Exhibits 8 to ECF 207; *Paulson v. McKowen, et al.,* 2023 U.S. Dist. LEXIS 43717, at *20 (D. Colo. March 15 2023) ("Class counsel [Rosca Scarlato] have significant experience in class action cases. . ."). Furthermore, in this Circuit, "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Farley v. Family Dollar Stores, Inc*., 2014 U.S. dist. LEXIS 154059, at *9 (D. Colo. Oct. 30, 2014). Here, Plaintiffs retained counsel who are highly experienced in prosecuting class actions against banks arising out of Ponzi schemes, and who have a successful track record of adequately representing large and diverse groups of investors in similar cases. *See*, *e.g.*, Resume of Class Counsel. Given their extensive

experience and success in prosecuting class actions, Class Counsel's judgment is also entitled to substantial weight.

### 5. The Proposed Award of Attorneys' Fees and Reimbursement of Litigation Expenses Is Appropriate

The terms of the proposed award of attorneys' fees, which are discussed in the Fee Application filed March 15, 2023 at ECF 207 are appropriate. Class Counsel has applied for a fee of 33% of the Settlement Fund. The Fee Application was filed with the Court and posted on the Settlement webpage twenty (20) days before the objection deadline. Moreover, the Notice sent to Settlement Class Members on January 13 and January 16, 2023, seventy-seven (77) days before the objection deadline, set forth the amount of attorneys' fees, (33%), and the maximum amount of litigation expenses (not to exceed $280,000) and Incentive Awards ($60,000 in the aggregate) Class Counsel would be seeking. See Vieira Decl. Ex. B § XII. No Settlement Class Member objected to the Fee Application. *Id.* ¶ 8.

As set forth in detail in the Fee Application, such a fee is reasonable considering the work performed, the results obtained, and is comparable to other settlements in complex class actions approved in the Tenth Circuit. *See, e.g., In re Crocs, Inc. Sec. Litig.* 2014 U.S. Dist. LEXIS 134396 at *11 (D. Colo. Sept. 18, 2014) ("Courts in the Tenth Circuit have noted that the typical fee award in complex cases is around one third of the common fund"); *Peace Officers' Annuity & Ben. Fund of Ga. v. DaVita Inc.,* 2021 U.S. Dist. LEXIS 131699 at *7 (D. Colo. July 15, 2021) (Same, quoting *Crocs* and collecting cases). In addition, any award of attorneys' fees and reimbursement of litigation expenses is subject to approval of the Settlement Agreement as fair, reasonable and adequate, and will not be paid until after the Funding Date. See Settlement Agreement ¶ 30.

### 6. Side Agreement Disclosure

The Settlement Agreement, including its exhibits, is the only agreement be and between the parties, aside from a standard, non-disclosure agreement that allows Defendant to terminate the Settlement if exclusion requests exceeded a specified threshold. See Fed. R. Civ. P. 23(e)(2)©(iv) and 23(e). The lack of any side agreement favors final Settlement approval.

### B.     The Plan of Allocation Is Fair, Reasonable, and Adequate Because It Treats All Class Members Equitably and the Method of Distribution Will Be Highly Effective

The proposed Plan of Allocation is fair, reasonable and adequate and satisfies Fed. R. Civ. P. 23(e)(2)(D) because it treats all Settlement Class Members equitably relative to each other. The Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

As set forth in the Notice, each Settlement Class Member would receive a pro rata share of the Net Cash Settlement Amount on each Claimant's out-of-pocket losses as determined by the Receiver. See Vieira Decl. Ex. B (Notice) § IV. The out-of-pocket losses would be calculated by the Receiver using the same claims data submitted in the Receiver action, or as supplemented pursuant to the processes in this Action. *Id.* The Receiver would then calculate each Claimant's recovery by multiplying the Net Cash Settlement Amount by a fraction: (a) the numerator of which is the claimant's out-of-pocket loss; (b) the denominator of which is the sum of all the authorized claimant's out-of-pocket losses. *Id.* This factor also supports granting final approval. *See, e.g.*, *Hefler v. Wells Fargo & Co.,* Case No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292, at *38 (N.D. Cal. Sept. 4, 2018) ("the allocation plan disburses the Settlement Fund to class members 'on a pro rata basis based on the relative size of' the potential claims that they are compromising . . . This type of pro rata distribution has frequently been determined to be fair, adequate, and reasonable." (collecting cases).

With respect to the way the Settlement will be distributed, Class Counsel submits that the proposed distribution method easily satisfies Rule 23(e)(2)(C)(ii) and will be highly effective. Counsel for the Parties and counsel for the Receiver spent considerable effort in arriving at the method of distribution being proposed to minimize the burden on Settlement Class Members to obtain a recovery. More specifically, Settlement Class Members who submitted timely claim forms in connection with the Rust Rare Coin Receiver action by the October 4, 2019 deadline pursuant to the Court-approved claims process, do not need to submit an additional claim in this Action, and their claim and recovery will be based on the information contained in the claim already submitted in the Receiver action. See Vieira Decl. Ex. B § XIII. The Notice also provided clear information on how to file a claim for those Settlement Class Members who either submitted a late claim or did not submit a claim in the Receiver action at all. *Id*

### C.   Plaintiffs' Notice of the Settlement Satisfied the Requirements of Rule 23, and Due Process

The Settlement Notice readily meets the requirements of Rule 23 and Due Process and complied in all respects with the requirements set forth in the Settlement Agreement and this Court's Preliminary Approval Order, (ECF 200), and Rule 23(e)(2)(C). The Court-approved Notice "gave the Settlement Class notice of the terms of the proposed Settlement; the rights of Class Members under the Settlement Agreement—including the rights to opt-out, object, and be heard at a Final Fairness Hearing; [and] the application for counsel fees, costs and expenses..." *Gordon v. Chipotle Mexican Grill, Inc.*, 2019 U.S. Dist. LEXIS 215430, at *5 (D. Colo. Dec. 16, 2019) (holding requirements

of Rule 23 and due process satisfied where similar notice was provided: "this Notice . . . constitutes due and sufficient notice").

The Notice also contained all the information required by Rule 23(c)(2)(B), and due process because it sufficiently apprised the Settlement Class of, among other things, the nature of the Action and the claims asserted; the Settlement's basic terms, including the method of distribution provided for in the Plan of Allocation; and notice of the binding effect of a judgment on Class Members. See Vieira Decl. Ex. B; *Crocs,* 306 F.R.D. at 693. Accordingly, the Notice to the Class met all requirements of Rule 23(c) and (e), and due process.

As set forth above, the Notice also informed Settlement Class Members who submitted timely claim forms by the October 4, 2019 deadline in connection with the Receiver action do not need to submit an additional claim in this Action, and that their claim and recovery will be based on the information contained in the claim submitted to the Receiver. *Id.* Ex. B at pp. 10-11. It also provided information on how to file a claim for those who either submitted a late claim or did not submit a claim in the Receiver action at all. *Id* . It further informed Settlement Class Members of the avenues available to them to obtain any additional information including by directly contacting Class Counsel or the Notice Provider via a toll-free phone number. *See Id.* ¶6; s*ee also Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 Fed. App'x. 752, 764 (10th Cir. 2020) (holding requirements of Rule 23 and due process satisfied where similar notice was provided).

Furthermore, as set forth above, the Notice Provider has satisfied its obligations in mailing the Notice and CAFA Notice, and by establishing the Settlement webpage where important information about the Settlement was posted. See Vieira Decl. ¶¶3, 7.

### D.    The Lack of Any Objections Warrants Final Approval

Pursuant to the Preliminary Approval Order, any Settlement Class Member who wanted to be excluded from the Settlement or to object to any aspect of the Settlement, the Plan of Allocation, or to the Fee Application was required to submit such exclusion request or objection to the Notice

Provider by April 3, 2023. No objections were received. See Vieira Decl. ¶ 8. It is established that the absence of objectors to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members. *Martin v. AmeriPride Servs.*, 2011 U.S. Dist. LEXIS 61796, at *21 (S.D. Cal. June 9, 2011) "The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement." ; *In re Skilled Healthcare Group, Inc.,* 2011 U.S. Dist. LEXIS 10139, at *11 (C.D. Cal. Jan. 26, 2011) ("In this case, the Court interprets the lack of anything other than a *de minimus* objection as ratification of the settlement terms by the class."); *see also Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *34 (C.D. Cal. June 10, 2005); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D.523,t 528 (C.D. Cal. 2004). Given the absence of objections, at this time, the Court should consider this as additional evidence in support of granting final approval.

Moreover, very few Settlement Class Members opted out of the Settlement. While six requests for exclusion from the Settlement Class were received, three of those six were from a related group that has since rescinded those requests and will now participate in the Settlement. Scarlato Decl. ¶29. Two of the remaining three were from parties to another lawsuit currently pending against Zions Bank, and the remaining request was from a trade creditor to Rust, who does not appear to be a Settlement Class Member. *Id.*

### E.    Final Approval of Class Certification

"Approval of a class action settlement under Fed. R. Civ. P. 23 takes place in two stages. In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement. In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it addresses (1) any timely objections

to the treatment of this litigation as a class action, and (2) any timely objections to the fairness, reasonableness, or adequacy of the settlement terms." *Paulson v. McKowen,* 2023 U.S. Dist. LEXIS 43717, at *5 (citations omitted).

In presenting the proposed Settlement to the Court for preliminary approval, Plaintiffs requested, for purposes of the Settlement, that the Court certify the Settlement Class under Federal Rule of Civil Procedure 23(a) and (b)(3). ECF 197. The Preliminary Approval Motion set forth the specific reasons why a Settlement Class should be certified and explained in detail how Plaintiffs met their burden to establish each of the requirements of Rule 23(a) in that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately represent the interests of the class. See ECF 197 at p.p. 15-18. Moreover, the Preliminary Approval Motion explained in detail why the Settlement Class meets the requirements of Rule 23(b) in that: (1) common legal and factual questions predominate; and (2) a class action is superior to other methods of adjudication. *Id.* at p.p. 19-20. Based on those arguments, the Court preliminarily certified the Settlement Class for purposes of Settlement. See ECF 200 at ¶4.

Nothing has changed to alter the propriety of the Court's preliminary certification, and no Settlement Class Member has objected to class certification. For all the reasons stated in Plaintiffs' Motion for Preliminary Approval, (ECF 197), which is incorporated herein by reference, and in the Court's Preliminary Approval Order (ECF 200), Plaintiffs request that the Court reaffirm its determinations in the Preliminary Approval Order and finally certify the Settlement Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

## V.    CONCLUSION

Based on the foregoing reasons, Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable and adequate.

Respectfully submitted this 14th day of April 2023.

/s/ Samuel Adams

Samuel Adams
ADAMS DAVIS P.C.
35 Broadway, Suite 203
Salt Lake City, UT 84101
Telephone:    (801) 532-9500
Email: sam@adamsdavis.com

*Local Counsel for Plaintiffs*

Alan L. Rosca (*pro hac vice*, ECF 14)
Paul J. Scarlato (*pro hac vice*, ECF 175)
ROSCA SCARLATO, LLC
161 Washington Street, Suite 1025
Conshohocken, PA 19428
23250 Chagrin Blvd., Suite 100
Beachwood, OH 44122
Telephone:    (484) 342-0700
Email: arosca@rscounsel.law
        pscarlato@rscounsel.law

*Proposed Class Counsel*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of April 2023, a true and correct copy of the foregoing Motion Of Plaintiffs For Final Approval Of Settlement and Plan of Allocation has been filed and served electronically via CM/ECF, which will be sent electronically to all counsel of record.

*/s/ Samuel Adams*